Oscar SALAZAR, Jr. et al., on behalf of and all others similarly situated, Plaintiffs,

v.

DISTRICT OF COLUMBIA et al., Defendants.

No. CIV. A. 93–452(GK).

United States District Court, District of Columbia.

Oct. 30, 2000.

Bruce Jerome Terris, Kathleen L Millian, Antonia M. Bookbonder, Terris, Provlik & Millian, L.L.P., Washington, DC, Lynn Edward Cunningham, George Washington University Law School, Washington, DC, Paula D. Scott, Neighborhood Legal Services Program, Washington, DC, April Isabel Land, University of New Mexico School of Law, Albuquerque, NM, Rochelle Bobroff, Department Of Health And Human Services, Washington, DC, Robert Irving Berlow, Crownsville, MD, for plaintiffs.

Jesse P. Goode, Peggy Massey, Washington, DC, Wayne Chester Witkowski, Nancy S. Schultz, Charles Luverne Reischel, Arabella W Teal, Jacques Philippe Lerner, Robert C. Utiger, Marceline D. Alexander, Office of Corporation Counsel, D.C., Washington, DC, Wanda Tucker, Dept. of health, Medical Assistance Admin., Washington, DC, for District of Columbia, Marion Barry, Vernon Hawkins, defendants.

Laurence Schor, McManus, Schor, Asmar & Darden, L.L.P., Washington, DC, for Advantage Healthplan, Inc., movant.

Kathleen L. Millian, Terris, Provlik & Millian, L.L.P., Washington, DC, for Kevin Lee, claimant.

### MEMORANDUM—OPINION

KESSLER, District Judge.

Plaintiffs have filed a Motion for An Award of Litigation Costs, Including Attorneys' Fees and Out-of-Pocket Expenses, for 1998. Defendants do not contest Plaintiffs' entitlement to an award of fees and costs but strongly oppose the actual amounts sought, which total $434,009.83. Upon consideration of the Motion, the Opposition, the Reply, the Supplemental Opposition, the numerous exhibits submitted by the parties, the applicable case law, and this Court's knowledge of the long history of this case, the Court concludes that Plaintiffs' Motion should be **granted in part** and **denied in part** for the following reasons.

### I. Factual Background

In 1993, Plaintiffs filed this class action, pursuant to 42 U.S.C. § 1983, on behalf of themselves and impoverished children and adults seeking Medicaid coverage and services in the District of Columbia. After a seven-day bench trial, in April of 1996, this Court issued a comprehensive opinion on liability on October 16, 1996, in *Salazar v. District of Columbia,* 954 F.Supp. 278 (D.D.C.1996). A Remedial Order was entered on January 21, 1997, and an Amended Remedial Order was entered on May 6, 1997. Both parties filed timely appeals

with the United States Court of Appeals for the District of Columbia Circuit.

Ultimately, after lengthy settlement discussions and on the eve of oral argument in the Court of Appeals, the parties were able to reach a settlement on September 24, 1998, and presented an Order Modifying the Amended Remedial Order of May 6, 1997, and Vacating the Order of March 27, 1997. *See* Order of September 28, 1998. ("Settlement Order" or "Order"). After public notice and a hearing, the final Settlement Order was entered on January 25, 1999. The Settlement Order provided for the payment of $1,600,000 to cover all attorneys' fees and expenses incurred through December 31, 1997 (¶ 69).[1] The parties agree that the Plaintiffs' claims for appellate, settlement, and attorneys' fees work were specifically exempted from the Settlement Order.

Plaintiffs presented the present fee petition to Defendants on May 7, 1999, in an effort to settle the issue without involving the Court. As of the formal filing date of the Motion, December 9, 1999, Defendants had still not provided any response to Plaintiffs' settlement proposal.

## II. Does the Settlement Order Govern the Hourly Rates At Which Plaintiffs Are To Be Paid?

Defendants argue, as a threshold matter, that Paragraphs 64 and 65 of the Settlement Order provide the standard for determining the hourly rates at which the lawyers representing Plaintiffs should be paid. In the Order, the parties agreed that the hourly rate for all attorneys handling claims of individual class members would be $75.00 per hour, regardless of the experience level of the lawyer performing the services; and they agreed that for attorney time spent monitoring compliance

with the Settlement Order, Bruce Terris and Lynn Cunningham would be compensated at $315.00 per hour, Kathleen Millian and Jane Perkins would be compensated at $265 per hour, paralegals would be compensated at $75 per hour, and all other attorney time would not exceed $200 per hour.

Defendants make two arguments. First, they contend that the Settlement Order should be interpreted, as a matter of contract construction, to apply to the 1998 fee request; and second, that the Settlement Order, based as it is on arms-length bargaining between the parties, provides the best evidence of what constitutes a reasonable hourly rate for attorneys fees in this jurisdiction. Neither argument proves persuasive.

First, as to the meaning of the Settlement Order itself, Defendants concede that fees sought for the work of Plaintiffs' counsel on the cross-appeals, settlement, and prior attorneys' fees litigation over "are not specifically covered by the settlement order." Def's Opp'n at 6.

■ Therefore, the only issue is whether the Settlement Order applies to the hourly rates for work spent on monitoring Defendants' compliance with its substantive provisions. As to that point, the Order clearly states in Paragraph 69 that the agreement between the parties covers only "claims by Plaintiffs for attorneys' fees and expenses through December 31, 1997," subject to the two exceptions explained in footnote 1. The Order does not purport to settle claims for any period extending past December 31, 1997, *i.e.*, the 1998 legal services covered by the pending fee petition. Moreover, the Order also clearly states in Paragraph 66 that the "rates set forth in Paragraphs 64 and 65 above for Plaintiffs' monitoring of Defendants' com-

1. There were two exceptions. The $1,600,000 payment did not include payments made to the Plaintiffs under consent judgment orders entered June 2, 1997, and September 15, 1997 (¶ 69(a)); and it did not include Plaintiffs' claim for reimbursement of the fees and

expenses for monitoring the partial settlement agreement of July 12, 1996, and the partial settlement agreement of May 22, 1997, which have been incurred since May 8, 1997 (¶ 69(b)).

pliance with this order were based on compromise and the parties do not intend these rates to apply for any purpose other than those set forth in Paragraphs 64 and 65." The language is crystal clear as to the inapplicability of the rates set forth in Paragraphs 64 and 65 to the present fee dispute.

What Defendants are really asking is that the Settlement Order be applied retroactively, in other words to work performed in 1998 even though the Order was not entered until January 25, 1999. That is not what the parties agreed to, nor is there any such provision in the Settlement Order. Clearly both parties knew that 1998 fees were being incurred during the hiatus between the December 31, 1997, closure date provided in Paragraph 69 and the presentation of the Order for approval on September 24, 1998. What is more, the parties also knew that even after filing of the Settlement Order, some type of public notice would be required because the interests of the class were substantially affected by the settlement; in fact, despite cooperation by the parties and an expedited schedule, final approval could not be granted until January, 25, 1999, some four months after the parties' initial request for Court approval.

Thus, the parties, both represented by very experienced and knowledgeable counsel,[2] had to know that legal representation was being provided to and for class members during 1988, while they were hammering out the details of their settlement and while the Court provided notice and an opportunity to be heard to class members. They also had to know that no Settlement Order could be approved and signed until those steps in the process were completed. Despite that certain knowledge, the Order clearly states that it only settles claims through December 31, 1997, and contains no provisions for retroactive application. Given this analysis, Defendants' arguments in favor of retroactivity lack persuasiveness.

With regard to Defendants' second argument (that the hourly rates contained in the Settlement Order provide the best evidence of what constitutes a reasonable hourly rate in this jurisdiction), Defendants are simply wrong. First, as noted above, Paragraph 66 of the Settlement Order explicitly notes that "these rates were based on compromise and the parties do not intend these rates to apply for any purpose other than those set forth in Paragraphs 64 and 65." Defendants' argument is flatly inconsistent with this language to which they have agreed. Second, rates which are the product of compromise and settlement, by definition, cannot represent an objectively reasonable market rate for similar work in this jurisdiction. It is the very nature of compromise and settlement for each party to give up something and therefore the rates contained in Paragraphs 64 and 65 are, of necessity, more than the Defendants would like to pay and less than the Plaintiffs would like to be paid.

For these-reasons, the Court concludes that the hourly rates set forth in Paragraphs 64 and 65 of the Settlement Order do not provide the standard for determining the hourly rates at which the lawyers representing Plaintiffs should be paid.

### III.  At What Hourly Rates Are Plaintiffs Entitled to be Paid?

In *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court determined that Congress intended that:

> 'reasonable fees' under § 1988 are to be calculated according to the prevailing

---

2.  It should be remembered that Plaintiffs were represented by Bruce Terris, lead counsel in this case who has handled major class action litigation in the federal courts for close to forty years, and Defendants were represented by John Ferren, then serving as Corporation Counsel for the District of Columbia, who had been an Associate Judge of the Court of Appeals for the District of Columbia for more than fifteen years and a partner at Hogan and Hartson prior to that.

market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel.

Four years later, our Court of Appeals, sitting en banc, held that:

> the prevailing market rate method heretofore used in awarding fees to traditional for-profit firms and public interest legal services organizations shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals.

*Save Our Cumberland Mountains v. Hodel,* 857 F.2d 1516, 1524 (D.C.Cir.1988) (en banc) ("*SOCM*").

Thereafter, in *Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir. 1995), *cert. denied,* 516 U.S. 1115, 116 S.Ct. 916, 133 L.Ed.2d 847 (1996) ("*Covington*"), our Court of Appeals spelled out the requirements for determining the hourly rates at which plaintiffs' counsel are to be paid in complex federal litigation under fee-shifting statutes:

> a fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.

First, there is no question that Plaintiffs have established the first *Covington* element pertaining to their billing practices. Defendants do not dispute that Plaintiffs are "attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals," *SOCM,* 857 F.2d at 1524; Def's Opp'n at 8.

The second and third *Covington* elements are, to some degree, intertwined, as the Court of Appeals recognized. 57 F.3d at 1108. In its most recent pronouncement in this much-litigated area, the Court of Appeals summarized those requirements:

> As we explained in *Covington,* a party who avers that the rate charged by her attorneys incorporated a public-spirited discount must offer evidence as to the correct market rate for the attorneys' services. The party must both 'offer evidence to demonstrate [her] attorneys' experience, skill, reputation, and the complexity of the case' and 'produce data concerning the prevailing market rates in the relevant community for attorneys of reasonably comparable skill, experience, and reputation.' 57 F.3d at 1108. In setting the market rate the district court should consider what rate would be commensurate with the attorneys' skill and experience, and with the quality of the attorneys' work.

*Board of Trustees of the Hotel and Restaurant Employees Local 25 v. JPR, Inc.,* 136 F.3d 794, 807 (D.C.Cir.1998) ("*JPR*").

In this case, Plaintiffs' counsel have more than adequately demonstrated their "experience, skill, reputation, and the complexity of the case". Indeed, Defendants do not seem to challenge the substance of Plaintiffs' presentation. The Court has already ruled that Plaintiffs' attorneys have provided "lawyering of the highest quality and professionalism." Memorandum–Opinion, March 12, 1998, at 4. In the 2½ years since this ruling, the Court has had extensive opportunity to further evaluate the skills and strategies of counsel. Its opinion remains the same—that Terris, Cunningham, and Millian are extraordinarily conscientious, tenacious, and dedicated lawyers, with a full grasp of the extremely complex technical issues which have been involved in the monitoring of the Settlement Order. They have worked diligently to resolve disputed questions with opposing counsel, and have sought the Court's assistance only when absolutely necessary and without burdening the Court with inconsequential litigation. Moreover, in conducting themselves with civility and professionalism, they have never for a second jeopardized the interests of their class members.[3]

---

**3.** There are three lawyers, for whose work Plaintiffs seek compensation, with whom the

The only objection which Defendants seem to be raising to Plaintiffs' evidence on the issue of "experience, skill, reputation, and the complexity of the case" is Plaintiffs' reliance on their own affidavits without a full scale canvassing of the legal community. This Court does not read either *JPR, SOCM, Covington* or *Blum* to impose such a rigid, formalistic, requirement. Rather, the language in those cases regarding sub-mission of evidence in addition to attorneys' own affidavits refers to data which establishes the prevailing hourly rates in the relevant legal community of complex federal litigation.

Therefore, this Court concludes that Plaintiffs have more than met their burden of demonstrating their "experience, skill, reputation, and the complexity of the case", as required by *JPR* and *Covington.*

The third *Covington* element which Plaintiffs must show in order to carry their burden of establishing a reasonable hourly rate is "the prevailing market rates in the relevant community." 57 F.3d at 1107. This is an issue on which the parties are in very substantial disagreement.

Plaintiffs are asking that Bruce Terris and Lynn Cunningham be compensated at the hourly rate of $444.00, that Kathleen Millian be compensated at the hourly rate of $369.00, that Daniel Rosenberg and Kristi Olson be compensated at the hourly rate of $184.00, that Clifford Rohde be compensated at the hourly rate of $160.00, and that paralegals be compensated at the hourly rate of $101.00.

Plaintiffs have arrived at these hourly rates in the following fashion. They have relied on the so-called *Laffey* matrix which was first approved in *Laffey v. Northwest*

*Airlines, Inc.,* 572 F.Supp. 354, 371–375 (D.D.C.1983), *aff'd,* 746 F.2d 4 (D.C.Cir. 1984), *overruled in part on other grounds by SOCM,* 857 F.2d at 1525. The original *Laffey* matrix presented a grid which established hourly rates for lawyers of differing levels of experience during the period from June 1, 1981, through May 31, 1982. The Court of Appeals accepted the 1981–1982 matrix in *SOCM,* 857 F.2d at 1525, and the parties to that case updated it through May 31, 1989, as part of a settlement. *Covington v. District of Columbia,* 839 F.Supp. 894, 898 (D.D.C.1993); the updated *Laffey* matrix has often been relied upon to determine appropriate fee awards. *See Trout v. Ball,* 705 F.Supp. 705, 709, n. 10 (D.D.C.1989); *Sexcius v. District of Columbia,* 839 F.Supp. 919, 924 (D.D.C.1993); *Palmer v. Barry,* 704 F.Supp. 296, 298 (D.D.C.1989).

In order to further update the *Laffey* matrix from May 31, 1989 to 2000, Plaintiffs obtained monthly data for the legal services component of the nationwide Consumer Price Index ("CPI") produced by the United States Department of Labor Bureau of Labor Statistics. They then applied that legal services CPI component to the *Laffey* matrix for each experience level of the grid to determine the current hourly rate for each experience level for the particular year in which the work was done. In addition, even though the work for which compensation is sought was performed in 1998, the Plaintiffs used *Laffey* rates for 1999, relying on the statement in *Missouri v. Jenkins,* 491 U.S. 274, 283–284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), that "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly

---

Court is not at all familiar: Daniel Rosenberg, Clifford Rohde, and Kristi Olson. Two of them performed a *de minimus* amount of work: Plaintiffs seek compensation for one hour of work by Mr. Rosenberg, who is a 1994 graduate of Georgetown Law School and was billed as an attorney with 1–3 years of experience, and they seek compensation for 4.5 hours of work by Ms. Olson, a 1996 graduate of Duke University School of Law who is

a staff attorney at the National Health Law Program with expertise in Medicaid law who was also billed as an attorney with 1–3 years of experience. The third lawyer, Clifford Rohde, a 1995 graduate of George Washington University Law School, performed 54.25 hours of work which was billed as below the 1–3 year experience level. The propriety of compensation for that number of hours will be addressed *infra.*

rates or otherwise—is within the contemplation of the statute." Applying the year 1999 hourly rates to the number of hours of work performed by each of the attorneys who worked on the case, Plaintiffs arrived at a total 1998 attorneys' fees request of $425,222.45.

Defendants strongly object to Plaintiffs' methodology. First, they argue the *Laffey* matrix in and of itself is insufficient evidence of the market rate for similar services and that affidavits or surveys should have been submitted. Second, they argue that if any matrix is to be used, it should be the U.S. Attorney's Office matrix which relies on the Consumer Price Index for the Washington, D.C., area rather than the nation. Third, they argue that whichever matrix is chosen, 1998, not 1999, hourly rates should be used. Fourth, they argue that Mr. Rohde's services should be billed at the rate paid to paralegals, namely $75.00 per hour. The Court will address these arguments *seriatim*.

■ First, Defendants are wrong when they contend that a matrix itself is insufficient to establish market rates for lawyers with experience incomplex federal litigation in the District of Columbia. *Covington* specifically directed that "[i]n order to demonstrate this third element, plaintiffs may point to such evidence as an updated version of the *Laffey* matrix *or* the U.S. Attorney's Office matrix, *or* their own survey of prevailing market rates in the community." 57 F.3d at 1109 (emphasis added). Moreover, in the very recent case of *JPR*, the Court of Appeals reaffirmed the vitality of *Covington* and declared that "[i]n setting the market rate, the district court should consider what rate would be commensurate with the attorneys' skill and

experience, and with the quality of the attorneys' work." 136 F.3d at 807. Thus, it is clear, as the Court of Appeals explained in *Covington*, that plaintiffs may submit a matrix alone, or *"may"* supplement such matrix with surveys, affidavits, and evidence of recent court awards of fees to attorneys with comparable qualifications handling similar cases. 57 F.3d at 1109 (emphasis added). Neither *Covington* nor *JPR* mandate rejection of a matrix alone.

While initially Plaintiffs relied only on two well-accepted matrices, which would have been sufficient, it should be noted that in their Reply they have also offered three surveys which support the general range in which they seek fees. In particular, Plaintiffs submitted a survey of rates in the District of Columbia, prepared by the National Survey Center, dated June 2, 1999, a 1998 billing rate survey of 10 major Washington, D.C. law firms conducted by the National Law Journal, and a 1998 billing rate survey of 13 of the city's leading firms by the Legal Times.

The ranges set forth in these three surveys are all generally consistent with and corroborative of the rates Plaintiffs seek.[4]

Second, the choice of which matrix should be used to set the prevailing hourly rate is a much more difficult issue. Both matrices have been accepted in different cases. Moreover, while the U.S. Attorney's Office Matrix has the distinct advantage of capturing data which is specific to the Washington, D.C., metropolitan area, as opposed to the *Laffey* index which relies on Consumer Price Index data from all over the country, the *Laffey* index has the distinct advantage of capturing the more relevant data because it is based on the

---

4. The only experience level at which there is any divergence between the rates sought by Plaintiffs and those described in the surveys, is at the top end of senior partner billings. It would appear that the rate sought for Mr. Terris and Mr. Cunningham is within, but at the very high end of, the billing range for senior partners with major D.C. law firms. There is no reason why Mr. Terris and Mr.

Cunningham, both of whom have spent a lifetime in public interest law handling complex federal litigation, should not be compensated at the same rates as their equally skilled legal brethren who have chosen a different, albeit more lucrative, path to professional satisfaction. *See Blum*, 465 U.S. at 895, 104 S.Ct. 1541; *SOCM*, 857 F.2d at 1524.

legal services component of the Consumer Price Index rather than the general CPI on which the U.S. Attorney's Office matrix is based.

Plaintiffs' expert, Dr. Michael Kavanaugh, explained that the D.C. Metropolitan CPI does not contain a separate component for legal services- and that such services are included in a much larger, more generalized category of "other goods and services". Because "[e]conomists use as specific an index as possible to determine changes in prices in a part of an industry, such as here changes of prices in legal services in the District of Columbia," Dr. Kavanaugh concluded that "components of the Consumer Price Index are the better tool to use to update an industry's prices rather than the entire Consumer Price Index." Kavanaugh Aff. ¶ 9.

Defendants have failed to offer any reasoned, or expert, rebuttal to this explanation. Consequently, the Court concludes that the updated *Laffey* matrix more accurately reflects the prevailing rates for legal services in the D.C. community.[5]

■ Third, as to whether Plaintiffs should be paid at 1998 or 1999 rates, Defendants argue that application of 1999 rates is not appropriate in this case because Plaintiffs did not file their fee petition until December 1999, and have not suffered the "substantial delay in payment" referred to by the Supreme Court in *Missouri v. Jenkins,* 491 U.S. at 283, 109 S.Ct. 2463. Plaintiffs were prepared to file their fee petition as early as May 7, 1999, and delayed their filing until December 9, 1999, because of the failure of Defendants to respond to their attempts to settle the issue without litigating it. Consequently, Plaintiffs can not be held accountable for the delay.[6]

However, it is clear that the Supreme Court contemplated a substantial delay when it referred to compensation received "several years" after the services were rendered as not being equivalent to the same dollar amount as if received "reasonably promptly" after the legal services were performed. *Id.* Consequently, the Court will deny Plaintiffs' request that compensation be paid at the 1999 rather than the 1998 rates.

■ Fourth, as to the hourly rate, at which Mr. Rohde should be paid, Defendants argue Plaintiffs have failed to offer an adequate justification for compensating him at the rate of $160.00 per hour. They are correct. The only response Plaintiffs have given is that because Mr. Rohde joined the firm without any litigation experience, they are asking less than the 1–3 year *Laffey* rate of $184.00 per hour and are only asking for the $160.00 per hour rate. But no rationale is submitted for that rate, even though it is lower than the *Laffey* rate. Since the burden is on Plaintiffs, and they have not carried it, it is appropriate to set Mr. Rohde's hourly rate at the rate suggested by Defendants, namely $75.00 per hour.

## IV. Are the Number of Hours Billed By Plaintiffs Reasonable?

■ Plaintiffs are requesting compensation for a total of 985.80 hours of attorney time and 572.25 hours of paralegal time devoted to this case in 1998 as well as .75 hour spent on the case in 1999. Defendants complain that the hours are excessive, that no billing judgment was exercised, and that the case was overstaffed. The Court does not agree.

As Plaintiffs explain, such a substantial amount of attorney time was required in

---

5. It should also be noted that Dr. Kavanaugh stated that in his opinion, "the market for legal services in complex federal litigation in Washington, D.C., is not a local market". Kavanaugh Aff. ¶ 15.

6. Whatever delay there has been is attributable to the seven months of non-responsiveness by the Defendants and, in all fairness to the parties, to the Court which greatly regrets its own delay in being able to resolve this Motion in a far more timely fashion.

1998 because the case was proceeding on three tracks simultaneously.

First, Plaintiffs were monitoring compliance with the Amended Remedial Order. That task required analysis of complex reports, meetings with Defendants' staff people, nagging of Defendants to obtain data and reports which they rarely, if ever, produced on time, aiding class members with reimbursement claims, and preparation for, and attendance at, regularly scheduled lengthy status conferences.

Second, Plaintiffs briefed Defendants' appeal and their own cross-appeal in the Court of Appeals. While settlement negotiations were taking place during this same time frame, they could not be completed before undertaking the appellate briefing because of delay necessitated by Defendants' need to consult extensively with other government officials who were often too busy to reach. Moreover, Defendants refused to agree to an additional extension of the appellate briefing schedule which, if consented to, would have obviated the need for the expenditure of many hours.

Third, a great many hours were spent in the actual negotiations and drafting which produced the parties' agreement and the final Settlement Order. While Defendants complain about the hours billed by Ms. Millian, who worked on this task in addition to Mr. Terris, the fact of the matter is that Defendants themselves had numerous attorneys participating in the early phases of the settlement discussions before the parties agreed to limit themselves to Mr. Terris and Mr. Ferren. Even at that point, it was essential that Mr. Terris consult with Ms. Millian about the substance of those meetings, about the strategies to be followed, and about what concessions could be legitimately made without abandoning the relief that had been won for members of the Plaintiff class. Finally, it was Mr. Ferren himself, as Corporation Counsel who negotiated the agreement with Mr. Terris, who specifically requested that Ms. Millian redraft the Amended Remedial Order to conform to the parties'

agreement. Numerous drafts were prepared and exchanged, and even after it was believed that a final settlement had been reached, the District of Columbia did not agree to it and there were significant hours spent in further negotiations and redrafting.

Defendants do not seriously dispute any of these facts. Consequently, the Court concludes, subject to the one instance discussed below, that the case was not over-staffed, that appropriate billing judgment was exercised by Plaintiffs as they state in their Declarations, and that, overall, the number of hours billed by Plaintiffs' counsel was reasonable and necessary.

Defendants further complain that Plaintiffs' counsels' time records are not detailed enough and that they cannot justify all the hours for which compensation is sought. The Court has carefully examined these records (which are explained, summarized, and categorized at great length in Plaintiffs' papers), and concludes that there is simply no merit to Defendants' position. This is the very kind of "nit-picking" which our Court of Appeals has discouraged and criticized.

Defendants have also objected to the 44 hours spent by Clifford Rohde in researching and drafting an internal legal memorandum on the catalyst theory of attorneys' fees recovery. The Court has already ruled that his billing rate shall be set at $75.00 per hour. In addition, the number of hours spent on this memorandum, which would amount to at least one week's worth of work, is excessive. Consequently, that number will be reduced by 50%, and Plaintiffs may be compensated for only 22 of the 44 hours Mr. Rohde spent on this project.

## V. What Are Reasonable Litigation Expenses?

Plaintiffs have requested an award of $8,787.38 in out-of-pocket litigation expenses for postage, photocopying, telephone calls, facsimile transmissions, mes-

sengers, local travel, Westlaw, transcripts, medical records and miscellaneous ($1.50). Defendants make no serious challenge to either the categories of expense nor the amounts, both of which the Court finds to be eminently reasonable in light of the extensive legal services performed.

## VI. Conclusion

For the reasons stated above, Plaintiffs' Motion for an Award of Attorneys' Fees and Out–of–Pocket Expenses, for 1998 [# 689] is *granted in part* and *denied in part.*

An Order will accompany this Opinion.