Joel BOLDEN, et al., Plaintiffs,

v.

J & R INCORPORATED, et al., Defendants.

No. CIV. A. 99–1255(GK).

United States District Court, District of Columbia.

March 1, 2001.

Avis E. Buchanan, Patrick William Lee, Crowel & Moring, L.L.P., Washington, DC, for Plaintiffs.

Reginald Lewis Holt, Sr., Darryl F. White, Bernard J. Casey, Reed, Smith, Shaw & McClay, L.L.P., Washington, DC, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees and Costs [# 41]. Upon consideration of the motion, opposition, reply, and the entire record herein, for the reasons stated below, Plaintiffs' Motion for Attorneys' Fees and Costs is **granted in part and denied in part.**

### I. Background

Plaintiffs, Joel Bolden and Len Silva, sued Defendant Muhammad Mehmood, a cab driver, and J & R Incorporated, a cab company, under 42 U.S.C. § 1981, the District of Columbia Human Rights Act, D.C.Code § 1–2519, and local common law. Plaintiffs claimed that they were refused taxicab service on the night of May 25, 1998, on the basis of Plaintiff Bolden's race. On June 21, 2000, the jury returned a verdict in favor of Plaintiffs on their race discrimination claims and on the breach of carrier duty claim, and awarded them a total of $120,000. Specifically, Plaintiffs each received $2,000 in compensatory damages and $18,000 in punitive damages for each of their successful claims.[1] Plaintiffs now move for $91,132.80 in attorneys' fees and $5,864.52 in costs.

### II. Analysis

#### A. *Attorneys' Fees*

Plaintiffs won their civil rights suit, and consequently, are entitled to attorneys'

---

1. Of the $18,000 in punitive damages awarded on each claim, $15,000 was assessed against J & R, and the remaining $3,000 was assessed against Mehmood.

fees as prevailing parties. *See* 42 U.S.C. § 1988; D.C.Code §§ 1–2553(a)(1)(E)(F) & 1–2556(b). The first step in an award of attorneys' fees is to determine the lodestar fee—the hourly rate multiplied by the number of hours reasonably expended on the case. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### 1. *Hourly Rates*

■ An attorney's actual billing rate is presumptively deemed a reasonable rate, provided that the rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1518–1519 (D.C.Cir.1988). Attorneys who do not charge a billing rate, such as those employed with non-profit or public interest groups, may be compensated at the hourly rates set forth in *Laffey v. Northwest Airlines, Inc.* 572 F.Supp. 354, 371–372 (D.D.C.1983), *rev'd on other grounds,* 746 F.2d 4 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985).

Plaintiffs request the current *Laffey* rate for work performed from June 1998 through June 2000 by attorneys Avis E. Buchanan and Susan E. Huhta of the Washington Lawyers' Committee, a non-profit public interest organization. *See* Pl.'s Fee Petition Ex. B ("Declaration of Susan E. Huhta"). Defendants do not dis-pute reliance on *Laffey* as a general matter, but argue that historic (*i.e.,* year 1999 and year 2000 rates); rather than current rates (*i.e.,* year 2001 rates), should apply to all work performed.

■ This suit was filed in May 1999, and a jury returned a verdict less than fourteen months later in June 2000. Given the brief period of time between initiation of this suit, subsequent to which most of counsel's hours were expended, and final judgment, Plaintiffs would not be prejudiced by application of historic hourly rates. The progress of this case has not been protracted; nor has it spanned multiple years. . Consequently, it differs from those cases which have permitted use of current hourly rates for services rendered in the past. *See e.g., Laffey,* 572 F.Supp. at 380 (adjustment for delay where case spanned thirteen years); *Missouri v. Jenkins* 491 U.S. 274, 283, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)(adjustment proper where there has been a "substantial delay in payment."). Accordingly, the Court concludes that the *Laffey* historic rates apply for all work performed by Ms. Buchanan and Ms. Huhta.[2]

Plaintiffs also request compensation for work performed by four attorneys employed by Crowell & Moring, LLP.[3] Instead of *Laffey* rates, Plaintiffs request an hourly rate equal to the firm's regular billing rate. Defendants' only objection here is that the $415.00 per hour billed by

---

2. Ms. Buchanan graduated in 1981 from Harvard Law School, and based on the *Laffey* matrix, should be compensated at the rate of $290 per hour for work completed in 1998–1999 and $295 per hour for work completed in 1999–2000. Ms. Huhta graduated in 1994 from the University of Wisconsin School of Law, and should be compensated at the *Laffey* hourly rate of $195 for work in 1998–1999 and $200 for work in 1999–2000. *See* Pl.'s Mot. for Attorneys' Fees, Ex. B at 2–3 ("Declaration of Susan E. Huhta").

3. Attorneys are Ms. Tracy Roman, a 1992 graduate from Virginia Law School; Mr. Leavy Mathews, a 1997 graduate from Howard Law School; Ms. Jennifer Tomchin, a 1997 graduate from Georgetown University Law School; and Mr. Patrick Lee, a senior partner at Crowell and Moring. *See* Pl.'s Mot. for Attorneys Fees, Ex. A, 1 at 1–2 ("Declaration of Tracy A. Roman").

Patrick Lee for 2.75 hours is unreasonable, and that therefore, his rate should be reduced to the $350.00 per hour rate provided for under the *Laffey* matrix. Because Plaintiffs did not submit any professional information on Mr. Lee or provide a rationale for the requested rate, the Court grants Defendants' request.[4] *See Salazar v. District of Columbia*, 123 F.Supp.2d 8, 14 (D.D.C.2000). Given the absence of any other objection by Defendants to Plaintiffs' requested hourly rate for work by Crowell and Moring, and given that these rates virtually mirror *Laffey* historic rates, the Court concludes that Plaintiffs' requested rates are reasonable.[5]

## 2. *Time Expended*

Plaintiffs request attorneys fees for 863 hours expended by Crowell and Moring and 232.7 hours expended by the Washington Lawyers' Committee. Defendants make several challenges to the amount of hours expended.

First, Defendants argue that Plaintiffs' total hours should be reduced by fifty percent because the time expended by five lawyers on a case which took only fourteen months and resulted in a one-and-half day trial was excessive. In so arguing, Defendants attempt to paint this case as a garden variety discrimination case of limited complexity and minimal importance. In fact, this was a significant civil rights case for the Washington, D.C. community. *See* Bill Miller, *$120,000 Award in Race Bias Case: Jury Finds D.C. Cabby Violated Civil Rights*, The Washington Post, June 22, 2000, at B1. Moreover, there have been various media accounts of the difficulties African–Americans face, particularly young African–American males, when hailing a cab in the District of Columbia, and of the resulting humiliation and frustration these experiences engender. *See e.g.,* Bill Miller, *D.C. Cab Company Accused of Racial Bias*, The Washington Post, June 8, 2000, at B1; *Catching Racist Cabbies?*, Letters to the Editor, The Washington Post, June 26, 2000, at A18.

This case presents a classic example of such discrimination. It involves claims brought by two young men, best friends, co-employees, roommates, almost mirror images of one another, except that one is black and one is white. The jury verdict was both a victory for Plaintiffs and an important, symbolic statement to the taxicab industry that such discriminatory conduct has no place on the streets of this city. The reasonableness of Plaintiffs' hours are assessed against this backdrop.

Plaintiffs are seeking compensation for 1095 hours. Using a forty billable hour week, Plaintiffs' request translates to 27.4 weeks, or almost seven months, of billable time. Concededly, the number of hours spent on this litigation was high, and for that reason, Plaintiffs' request will be reduced by ten percent. However, despite making this reduction, which is rather minor, the Court emphasizes that in order to provide high quality legal representation—equivalent to that which Crowell and Moring would provide any corporate client—in what was a relatively novel case of great consequence to the public, it was both

---

**4.** It should be noted that Plaintiffs are not even claiming compensation for 75% of the time expended by Mr. Lee. *See* Pl. Mot. for Attorneys' Fees, Ex. A, 1 at 5.

**5.** Plaintiffs seek compensation for Mr. Mathews and Ms. Tomchin's work at an hourly rate of $145 for work performed in 1998– 1999 and of $170 for work performed in 1999–2000. They seek compensation for Ms. Roman's work at an hourly rate of $190 for 1998–1999 work and $215 for 1999–2000 work. They seek an hourly rate of $415 for Mr. Lee's work in 1999–2000. *See* Pl.'s Reply at Ex. A, 1.

appropriate and essential that counsel spend the necessary amount of time to perform first-rate lawyering.

Defendants also argue that the fee award should be reduced by fifty percent to reflect time spent only on Plaintiffs' successful claims. However, in the exercise of good billing judgment and in recognition of the tort claims on which they did not prevail, Plaintiffs have already cut their fees by twenty percent.[6] Further, Plaintiffs succeeded on their discrimination claims, which constituted the core of their case. The fact that Plaintiffs did not prevail on a number of other counts is of no significance because the underlying factual context (*i.e.*, the refusal of taxicab service) was the same for all claims. The Supreme Court has recognized that under these circumstances, a party may recover full attorneys' fees:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every

contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

■ *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)(internal citations omitted). Accordingly, because Plaintiffs "obtained excellent results" in what was fundamentally a civil rights suit against Defendants, the fee award will not be reduced for their failure to prevail on certain common law claims.

■ Defendants also argue that a blanket reduction of fifty percent should apply because Plaintiffs failed to adequately document their time. In particular, they argue that instead of specifying the precise amount of time spent on each individual task, Plaintiffs' billing records include several entries for blocks of time during which multiple tasks were completed. The Court has undertaken a careful review of Plaintiffs' billing records, and finds them sufficiently detailed and descriptive. The onerous segregation of tasks urged by Defendants is not necessary for the Court to determine the reasonableness of time expended.

Finally, Defendants raise several specific objections to Plaintiffs' hours. Although many of these objections are insignificant, some are sustained.

■ First, Plaintiffs have requested compensation for 120 hours in staff and client conferences. *See* Def.'s Opp.'n at 10. Because these conferences were often overstaffed—sometimes attended by three attorneys—this request is reduced by twenty percent.

---

**6.** Before applying this twenty percent reduction, Plaintiffs excluded over 600 hours of time which, at market rates, is valued at more than $90,000. *See* Pl.'s Reply at 3–4.

Second, the following problems justify reductions: (1) Ms. Roman's time spent at the meet and confer session held on July 20, 1999, is reduced from 2.5 hours to one hour, given that Ms. Huhta, who also attended, billed only one hour; (2) Ms. Roman's time spent at the Court-sponsored mediation session held on February 1, 2000, is reduced from six to four hours, given that Ms. Huhta billed four hours for this session; and (3) two hours of Mr. Leavy's time spent on September 24, 1998, is disallowed because it occurred prior to Crowell and Moring's involvement in the case. The Court finds that all other hours were reasonably expended.

### B. *Costs*

 Plaintiffs seek $5,864.52 costs for expenditures relating primarily to filing fees, duplication, postage, courier services, computerized research and the transcription of four depositions. Upon review of the records, the Court concludes that the costs are reasonable with the following exception: word processing costs of $105 will not be allowed because that cost is included in the firm's overhead.[7]

### III. Conclusion

Plaintiffs' Motion for Attorneys' Fees and Costs shall be **granted in part** and **denied in part**. An Order will issue with this Opinion.

---

**7.** Plaintiffs are not seeking the $138.65 for travel and $10.00 for meals and lodging that were included in their original submissions. *See* Pl.'s Reply at 12.