# In the United States Court of Federal Claims

No. 09-114C

(Filed: April 12, 2013)

```
******************************************  *
                                            *
JOHNNY GREGORY, et. al.,                    *
                                            *
                      Plaintiffs,           *      Rails-to-Trails Case; Recovery of
                                            *      Attorneys' Fees and Costs;
                                            *      Lodestar Method of Calculation;
 v.                                         *      Reasonable Reductions Based
                                            *      Upon Degree of Success.
THE UNITED STATES,                          *
                                            *
                      Defendant.            *
                                            *
******************************************  *
```

*Thomas S. Stewart*, with whom were *Elizabeth G. McCulley*, *Steven M. Wald*, and *J. Robert Sears*, Baker, Sterchi, Cowden and Rice, L.L.C., Kansas City, Missouri, for Plaintiffs.

*Joshua A. Doan*, with whom was *Ignacia S. Moreno*, Assistant Attorney General, United States Department of Justice, Environment and Natural Resources Division, Natural Resources Section, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

On February 11, 2013, the 257-member plaintiff class ("Plaintiffs") in this Rails-to-Trails case filed a motion for recovery of attorneys' fees and costs under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"). The URA provides that a plaintiff who is awarded compensation for the taking of property by a federal agency may be awarded "such sum as will in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney . . . fees." See 42 U.S.C. § 4654(c). In this case, Plaintiffs were successful in their takings claims for 26 of the 331 properties alleged to have been taken by the Government. The claims regarding the other 305 properties were dismissed on the Government's motion for summary judgment. A joint appraiser determined the compensation for the 26 land parcels which, with delay damages, totals approximately $110,000.

Plaintiffs request attorneys' fees in the amount of $705,087.50 and costs in the amount of $69,866.49. These fees are based on 2,450.40 hours of legal work performed by various attorneys from Baker, Sterchi, Cowden & Rice, L.L.C. from February 9, 2009 to January 31, 2013. The law firm is located in Kansas City, Missouri, and Plaintiffs have based their billing rates on those charged by comparable large law firms in the Kansas City market. Plaintiffs' attorneys also request $25,000 in anticipated closing costs. Both Plaintiffs and the Government agree that the "lodestar" method of calculating attorneys' fees is appropriate in this case. The parties disagree, however, on whether the fee award should be reduced based on the results obtained and whether Plaintiffs' attorneys' hourly billing rates are reasonable.

For the reasons set forth below, Plaintiffs are eligible to recover attorneys' fees and costs under the URA. The Court calculated the fee award with appropriate reductions in the amount of reasonable hours based on the results obtained in the litigation. The Court finds that Plaintiffs' attorneys' requested billing rates are reasonable for this type of complex litigation, and has calculated the attorneys' fees to be $299,202.75. The amount awarded is 42.4 percent of the amount claimed. The Court grants recovery of costs at the same proportion applied for attorneys' fees. Applying 42.4 percent to the $69,866.49 claimed, the award for costs is $29,648.73. Lastly, the Court agrees with the Government that $10,000 is sufficient to close the class, and awards closing costs in that amount.

## Discussion

In general, our legal system follows the "American Rule," under which "each party in a lawsuit ordinarily shall bear its own attorney's fees." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). However, under certain fee-shifting statutes like the URA, the trial court may award attorneys' fees to a prevailing party and "is afforded considerable discretion" in making this award. See Bywaters v. United States, 670 F.3d 1221, 1228 (Fed. Cir. 2012). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. This method, known as the "lodestar," is the preferred method of calculating attorneys' fees in this Court.[1]

The lodestar calculation, however, does not end the inquiry. See Hensley, 461 U.S. at 434. If a plaintiff has achieved only "partial or limited success," this calculation may lead to an excessive amount of fees. Id. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Id. Courts may consider many factors in adjusting this calculation.[2] The "most critical factor" to be

---

[1] The lodestar is also the preferred method in the U.S. Court of Appeals Federal Circuit. See, e.g., Bywaters, 670 F.3d at 1228-29.

[2] See Johnson v. Georgia Highway Express, Inc. 488 F.2d 714 (5th Cir. 1974) (listing twelve factors to consider in awarding attorneys' fees).

considered is the degree of success obtained. Hensley, 461 U.S. at 434. In accounting for the degree of success obtained, adjustments to the lodestar figure itself are proper only in "rare" and "exceptional" cases, but the trial court may consider the results obtained by the plaintiff in determining the lodestar figure in the first place. See Bywaters, 670 F.3d at 1228-29. The distinction is that the Court may reduce the number of hours "reasonably expended" on the litigation when initially "calculating the lodestar figure," but may not "reduc[e] the lodestar figure itself." Id.

Plaintiffs in this case were successful in proving Government takings for only 26 of the 331 parcels of land involved, which amount to approximately 8 percent of the total claims. However, much of the work involved in this class action suit was related to all or many of the claims, and cannot be parsed into parcel-by-parcel calculations. Further, the Court recognizes that this type of Rails-to-Trails litigation is a highly specialized area of the law, one that benefits many landowners who would not otherwise bring claims for individual takings. The Federal Circuit has noted that "these types of disputes serve[] a greater purpose (vindicating constitutionally protected property rights)." Bywaters v. United States, 684 F.3d 1295, 1296 (Fed. Cir. 2012). Considering the interrelated nature of the claims and the Court's desire not to inhibit future Rails-to-Trails lawsuits by large, well-resourced law firms, the Court declines to reduce the hours based upon the percentage of success. Instead, the Court largely adopts the Government's proposal for a more equitable accounting of hours.

I. Attorneys' Fees Calculation

A. Number of Hours Reasonably Expended

Trial courts should consider the amount of hours and money involved in a case, and the results obtained "when determining the reasonable number of hours expended and the reasonable hourly rates of the attorneys." Bywaters, 670 F.3d at 1231. "[W]here the amount involved is small, reductions in the reasonable number of hours expended or the reasonable hourly rate can easily be made to reflect this fact." Id. Here, Plaintiffs were successful in obtaining only $110,000 in relief for 26 parcels of land, yet their attorneys have requested almost $800,000 in fees and costs associated with litigating the outcome for 331 parcels of land. It is appropriate, therefore, to reduce the number of hours to a level that would be "reasonably expended" in litigating the 26 successful takings claims.

As part of the lodestar calculation, the Court must first determine the number of hours reasonably spent on the litigation. The Government submits, and the Court agrees, that it is proper to divide the time spent on this case into five distinct periods in order to analyze the varying nature of the work involved. Def.'s Resp. 12. The first period (February 9, 2009 to March 17, 2010) extends from the time of the filing of the original complaint until just prior to the preparation of the second amended complaint. The second period (March 18, 2010 to February 28, 2011) extends from the preparation of the

second amended complaint through the preparation of the claims book and the lodging of objections. The third period (March 1, 2011 to December 29, 2011) is when the parties prepared and argued their cross-motions for summary judgment, and during which Plaintiffs sought reconsideration of the Court's summary judgment decisions. The fourth period (January 3, 2012 to January 21, 2013) involves the joint appraisal process during which the parties determined the amount owed to the successful plaintiffs. The fifth period (January 22, 2013 to January 31, 2013) is when Plaintiffs' counsel prepared their motion for attorneys' fees and costs. The Court reduces the hours billed as follows.

### i. First Period: February 9, 2009 to March 17, 2010

Plaintiffs seek reimbursement for 726.7 hours billed during this period by five partners, three associates, and five paralegals. These attorneys and paralegals worked on tasks including the drafting of the original complaint and first amended complaint, the preparation of the motion for class certification, the preparation of initial disclosures, and the preparation of status reports. They also conducted research on the railroad's acquisition of the subject corridor, gathered and analyzed chain-of-title documents, traveled to Mississippi to gather deeds and meet with clients, researched state law issues, and began compiling Plaintiffs' class index and claims book. See Pls.' Mot., Ex. A at 1-39.

None of the named plaintiffs in the original complaint or the first amended complaint were ultimately successful; the second amended complaint was the first to include any successful plaintiffs. Def.'s Resp. 12-13. However, much of the research and drafting done during this period was necessary to the case for later, successful plaintiffs, and should not be discounted entirely. The research performed on the railroad's history and the various state law issues, as well as the work done towards class certification, merit substantial attorneys' fees. Given that there is no feasible way to parse the recorded hours into parcel-by-parcel calculations, the Court in its discretion reduces the hours in the first time period by 50 percent, and will award fees for 363.35 hours of work.

### ii. Second Period: March 18, 2010 to February 28, 2011

Plaintiffs seek reimbursement for 761.7 hours billed during this period by two partners, two associates, and two paralegals. These attorneys and paralegals worked on tasks such as preparing Plaintiffs' class index and claims book and responding to the United States' objections to the claims book. Plaintiffs' attorneys and paralegals also traveled to Mississippi to gather deeds, met with various plaintiffs, and conducted legal research regarding railroad charters and other Mississippi state law issues. See Pls.' Mot., Ex. A at 39-78.

This time period is most subject to reduction due to the segregable nature of the work involved. The attorneys and paralegals spent much of this time researching claims

of title and preparing a claims book, which consisted of individualized claims from all 331 parcels of land. As this type of work is primarily claim-specific and Plaintiffs were only successful in approximately 8 percent of their claims, the Court substantially reduces the number of hours spent on this portion of the litigation to reflect the reasonable number of hours that would have been required to litigate the 26 successful claims. Considering that this period of work was not *entirely* claim-specific, the Court only reduces the number of hours spent by 80 percent, and will award fees for 152.34 hours of work.

### iii. Third Period: March 1, 2011 to December 29, 2011

Plaintiffs seek reimbursement for 763.8 hours billed during this period by two partners, one associate, and three paralegals. The bulk of the time in this period was spent preparing various summary judgment filings, as well as preparing for and presenting oral argument and preparing Plaintiffs' motion for reconsideration. See Pls.' Mot., Ex. A at 78-115. A substantial portion of this work involved the claims of the 305 unsuccessful land parcels. The Court finds that a significantly lower number of hours would have been reasonably necessary to prepare and argue motions for only the 26 successful claims. Again, the Court acknowledges that much of this time was spent on work product applicable to all of the claims, and in its discretion reduces the hours spent in this time period by 60 percent. Accordingly, it will award fees for 305.52 hours of work.

### iv. Fourth Period: January 3, 2012 to January 21, 2013

Plaintiffs seek reimbursement for 187.9 hours billed during this period by three partners and multiple paralegals for work primarily involving the joint appraisal process. See Pls.' Mot., Ex. A at 115-33. Plaintiffs' attorneys visited the land parcels, reviewed the appraisals, and worked to resolve the amount of principal and interest owed for each successful parcel. Id. The Court finds all of these hours to be reasonable.

### v. Fifth Period: January 22, 2013 to January 31, 2013

Plaintiffs seek reimbursement for 10.3 hours, during which Mr. Stewart prepared Plaintiffs' motion for attorneys' fees and costs. Pls.' Mot., Ex. A at 133-34. The Court finds all of these hours to be reasonable.

By adding the total hours from each period, the Court finds the sum of hours reasonably expended on this litigation to be 1,019.41.

### B. Reasonable Billing Rate

The second step of the lodestar calculation is to determine the reasonable billing rates of the attorneys involved. Reasonable billing rates are calculated according to the

"prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1994). Although "a court in general should use the forum rate in the lodestar calculation," an exception applies when "the bulk of the work is done outside of the [forum] in a legal market where the prevailing attorneys' rates are substantially lower." Bywaters, 670 F.3d at 1233 (quoting Avera v. Sec'y of Health and Human Serv., 515 F.3d 1343, 1348-49 (Fed. Cir. 2008)). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.

The bulk of the work done for Plaintiffs in this case was performed in Kansas City, Missouri, a legal market with substantially lower rates than the District of Columbia. Pls.' Mot. 14-15. Further, in their motion for attorneys' fees, Plaintiffs' counsel elected to use their Kansas City billing rates. As such, the Court finds that Kansas City billing rates apply to this case. Specifically, Plaintiffs have requested the following billing rates: $475 per hour for partners; $375 per hour for Elizabeth McCulley;[3] $275 per hour for associates; and $150 per hour for paralegals. Pls.' Mot., Ex. B. In addition to the affidavit of Thomas Stewart, a partner at Baker, Sterchi, Cowden & Rice L.L.C. and lead counsel in this case, Plaintiffs have submitted affidavits from five other attorneys at large law firms in Kansas City to establish the reasonableness of the rates requested. Pls.' Mot., Exs. C-G. In fact, Plaintiffs' requested rates not only appear to be reasonable, they seem to be average or below average for the Kansas City market. Id.

While the Government argues for lower billing rates, the Court notes that this type of complex federal litigation is a highly specialized area of the law. Attorneys from Baker, Sterchi, Cowden & Rice, L.L.C. are involved in approximately 75 percent of the pending Rails-to-Trails cases in this Court. Very few firms in the country have the willingness and the expertise to take on these class action suits against the Government, and this uniqueness is reflected in their billing rates. For these reasons, the Court finds the requested rates to be reasonable.

Thus, the Court completes the lodestar calculation by multiplying each attorney's reasonable number of hours expended by his or her reasonable billing rate:

|  | Hours | Rate | Total |
|---|---|---|---|
| Partners | 212.55 | $475/hr | $100,961.25 |
| Ms. McCulley | 270.70 | $375/hr | $101,512.50 |
| Associates | 130.44 | $275/hr | $35,871.00 |
| Paralegals | 405.72 | $150/hr | $60,858.00 |
| **Total** |  |  | $299,202.75 |

---

[3] Elizabeth McCulley is billed at a "blended" rate to reflect her transition from associate to partner during this litigation.

6

C.  Litigation Costs

The URA also provides for reimbursement of Plaintiffs' reasonable costs and expenses.  42 U.S.C. § 4654(c).  Plaintiffs' counsel claims costs of $69,866.49 for four years of work on this class action lawsuit.  Pls.' Mot. 20.  These costs were actually incurred by the firm for its extensive deed research, state law research, map printing, and claims book preparation.  Id.  A large portion of these costs was incurred by employing third parties to assist the firm with localized research.  Id.  The Court finds it reasonable to award costs in the same proportion (42.4 percent) as applied for the recovery of attorneys' fees.  Multiplying the costs claimed, $69,866.49, by 42.4 percent yields a cost recovery of $29,648.73.

D.  Closing Costs

Plaintiffs seek $25,000 in anticipated costs to close the class through a fairness hearing.  Pls.' Mot. 13-14.  Counsel for Plaintiffs admit that this figure is "somewhat arbitrary," and the Court agrees.  As these attorneys have participated in multiple class action Rails-to-Trails cases, the Court finds that closing a class of this size should not require any extraordinary effort or novel undertakings by counsel.  Plaintiffs' counsel should have many work products for any fairness hearing pleadings, and sending notice to the class members can largely be accomplished by paralegals or associates.  The Court finds that $10,000 should be sufficient to close the class.

Conclusion

The Court GRANTS IN PART Plaintiffs motion for attorneys' fees, with adjustments for the reasonable number of hours spent on successfully litigating the 26 takings claims.  The Court finds Plaintiffs' counsel's proposed rates to be reasonable, and calculates the total attorneys' fees to be $299,202.75.  The Court also awards costs of $29,648.73, and closing costs of $10,000.00.  In sum, the Clerk shall enter judgment for Plaintiffs in the amount of $338,851.48.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge

7