NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**DROP STOP LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,**
*Plaintiff-Appellee*

**v.**

**JIAN QING ZHU, "JOHNNY," AN INDIVIDUAL, ZAKE INTERNATIONAL, INC., AN INDIANA CORPORATION, ZAKE USA, AN UNINCORPORATED ENTITY, 3BTECH, INC., AN INDIANA CORPORATION, SHENZHEN ZHOUWU TECHNOLOGY CO., LTD., A CHINESE LIMITED COMPANY, TAIWU KEJI CO., LTD., A CHINESE LIMITED COMPANY,**
*Defendants-Appellants*

———————————

2018-1533

———————————

Appeal from the United States District Court for the Central District of California in No. 2:16-cv-07916-AG-SS, Judge Andrew J. Guilford.

———————————

Decided: February 8, 2019

———————————

GUY RUTTENBERG, Ruttenberg IP Law, PC, Los Angeles, CA, for plaintiff-appellee. Also represented by DANIEL

A. KADIN, BASSIL GEORGE MADANAT.

LEI MEI, Mei & Mark LLP, Washington, DC, for defendants-appellants. Also represented by RICHARD HADORN, PHILIP ANDREW RILEY, LAURENCE M. SANDELL.

————————————

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Defendants-Appellants Jian Qing "Johnny" Zhu, 3BTech., Inc., Zake International, Inc., Zake USA, Shenzhen Zhouwu Technology Co., Ltd., and Taiwu Keji Co., Ltd. (collectively, "Defendants") appeal from a decision of the United States District Court for the Central District of California finding this case exceptional and awarding attorney fees pursuant to 35 U.S.C. § 285. *Drop Stop LLC v. Zhu*, No. 16-07916, 2018 WL 1407031 (C.D. Cal. Jan. 22, 2018) ("*Decision on Appeal*"). Because the district court did not abuse its discretion in finding this case exceptional within the meaning of 35 U.S.C. § 285, and awarding attorney fees, we *affirm*.

## I. BACKGROUND

Plaintiff-Appellee Drop Stop LLC ("Drop Stop") is the assignee of U.S. Patent No. 8,267,291 ("the '291 patent"), which is entitled "Apparatus for Closing Gaps." The '291 patent is directed "to an apparatus that obstructs the gap between an automobile's front seats and the center console, preventing personal items from becoming lodged in that gap." *Decision on Appeal*, 2018 WL 1407031, at *1. Drop Stop markets and sells its patented Drop Stop® car seat gap filler through several distribution channels, including Amazon. *Id.*

Defendant Johnny Zhu runs various corporate entities that import Chinese-made products into the United States. Relevant to this appeal, Defendant Zhu and Defendant

Taiwu imported and offered for sale in the United States a product called the "ChiTronic Car Vehicle Seat Hand Brake Gap Filler Pad" ("the ChiTronic"), the accused product in this case. At this stage, Defendants[1] have stipulated to infringement, and they do not challenge the final judgment that the ChiTronic infringes each asserted claim of the '291 patent.

Beginning in 2015, Defendants imported, offered for sale, and sold the ChiTronic product on Amazon through a storefront named "Also Popular." In March 2015, Drop Stop sent a cease-and-desist email through the Amazon website, alleging that the ChiTronic infringed the '291 patent and demanding that Also Popular take down the listing. *Id.* Also Popular initially complied, but four days later it relisted the accused product and sent Drop Stop a message through Amazon representing that it had sent both the ChiTronic and Drop Stop® products to an attorney— Richard MacMillan—and enclosing a non-infringement opinion from him. *Id.* Counsel for Drop Stop sent a letter to MacMillan responding to the non-infringement positions. *Id.* at \*2. MacMillan forwarded that letter to Defendants, asking to discuss it, but Defendants did not respond to either MacMillan's request or to Drop Stop's letter. *Id.*

During discovery, it was revealed that MacMillan's non-infringement analysis expressly warned that his "informal opinion cannot be relied upon definitively," emphasizing that "[a] formal opinion is required, and that involves extensive study and other efforts to provide a reliable outcome." *Id.* Defendants omitted this disclaimer from the email Also Popular sent to Drop Stop with the

---

[1] During litigation, all six Defendants stipulated to joint and several liability for any damages assessed and agreed to be treated as the same entity for purposes of Drop Stop's claims.

non-infringement positions and did not produce the original version of the email until MacMillan's deposition. At his deposition, moreover, MacMillan testified that Defendants never sought a formal opinion from him and that "he could not stand by his informal opinion." *Id.*

After months of investigation in an attempt to identify the Defendants, Drop Stop was able to obtain names and email addresses from Amazon. *Id.* Drop Stop filed suit against five of the six Defendants in October 2016, alleging infringement of the '291 patent. *Id.* Although the parties initially discussed waiving service and a plan for limited damages discovery, counsel for Defendants stopped responding. *Id.*

Drop Stop ultimately served Defendants through their registered agent at their headquarters. After all five Defendants failed to answer the complaint, Drop Stop moved for default judgment, which the court entered. *Id.* Defendants later moved to set aside default, alleging that they were improperly served. The court held a hearing on Defendants' motion and "became further convinced that Defendants may be unduly delaying litigation by keeping this case at its starting gate." *Drop Stop LLC v. Zhu*, No. 16-07916, 2017 WL 3433696, at *2 (C.D. Cal. Jan. 30, 2017). The court "ordered the parties to meet and confer to see whether they could reach an agreement regarding service." *Id.* The parties were unable to resolve the issue and the court ultimately determined that "service has been successfully accomplished here and some cost-shifting" to Drop Stop was appropriate. *Id.* The court set aside the default, but ordered Defendants to pay $5,000 to Drop Stop's counsel "for costs incurred serving Defendants and opposing this motion." *Id.* Defendants failed to pay the sanction until the court set a formal deadline for payment. *Decision on Appeal*, 2018 WL 1407031, at *2. The five Defendants filed their first answer in February 2017.

The parties discussed settlement and attended court-ordered mediation, but were unable to settle the case. *Id.* at *3.[2] Defendants subsequently amended their answer and added, among other things, a patent misuse defense based on Drop Stop's statements during the parties' settlement discussions and mediation.

After mediation, Defendants informed Drop Stop of another entity that should have been named as a defendant: Taiwu. By agreement of the parties, Drop Stop amended its complaint to add Taiwu and to make clear that infringement was asserted both literally and under the doctrine of equivalents. Defendants filed an amended answer and counterclaims, adding new obviousness and indefiniteness defenses. The parties then filed cross motions to dismiss. In an order dated January 20, 2017, the district court denied Defendants' motion and determined that Defendants' amended answer to the original complaint was the operative pleading. *Drop Stop LLC v. Zhu*, No. 16-07916, 2017 WL 3452990, at *2 (C.D. Cal. June 20, 2017). In that same

---

[2]    One of the Defendants—Shenzhen—did not appear for mediation. Drop Stop later moved for sanctions against Shenzhen for failing to appear at the mediation and against all Defendants for using private settlement discussions to assert counterclaims and defenses. The district court denied the motion. *Drop Stop LLC v. Zhu*, No. 16-07916, 2017 WL 3433695, at *2 (C.D. Cal. June 30, 2017). The court explained that, although the circumstances surrounding Shenzhen's appearance at mediation were "concerning," as there was some debate as to whether Shenzhen appeared through a representative, it was "unclear whether this was all due to bad faith or mere sloppiness." *Id.* As to Defendants' use of settlement discussions, the court found it "unnecessary to further remediate any harm" by way of sanctions given the court's decision to dismiss the patent misuse affirmative defense. *Id.*

decision, the court granted Drop Stop's motion to dismiss Defendants' antitrust counterclaim and struck the patent misuse and inequitable conduct affirmative defenses. *Id.* at *3–4.

The parties continued to engage in discovery and Defendants submitted a lengthy expert report which focused in large part on the defenses the court had already stricken. *Decision on Appeal*, 2018 WL 1407031, at *8. Given continuing disputes as to whether Defendants could raise certain affirmative defenses and counterclaims, the parties entered into a stipulation providing that Drop Stop need not respond to Defendants' invalidity report until three weeks after the court ruled on the propriety of the invalidity arguments set forth in Defendants' expert report.

The parties filed cross motions for summary judgment which led to a series of ex parte motions relating to Defendants' attempts to assert defenses the court had already stricken. *Id.* at *3. In denying Defendants' ex parte application, the court noted that it was "concerned about [Defendants'] misleading statements" and indicated that it would consider sanctions against Defendants. *Id.* In its later decision granting-in-part Drop Stop's motion for summary judgment, the court explained that "Defendants have failed to preserve invalidity defenses based on obviousness and indefiniteness" and further "failed to preserve a defense to infringement under the doctrine of equivalents on the basis of prosecution history estoppel." Civil Minutes at 16, *Drop Stop LLC v. Zhu*, No. 16-07916 (C.D. Cal. Aug. 28, 2017), ECF No. 138. Although the district court discussed sanctions against Defendants arising from issues presented ex parte, it denied them without prejudice. *Id.*

By order of the court, the parties attended a second mediation. This time, the parties reached a settlement. As part of the agreement, Defendants stipulated to infringe-

ment of claims 8, 10–14, and 16–18 of the '291 patent. *Decision on Appeal*, 2018 WL 1407031, at \*4. Defendants also agreed to dismiss their defenses and counterclaims with prejudice. The parties further stipulated that, after entry of final judgment, "Drop Stop may file a motion for attorneys' fees and costs" and that the court would "retain jurisdiction to consider such motion, including to make any and all factual findings" related thereto. *Id.* The district court entered final judgment, and Drop Stop subsequently filed a motion for attorney fees pursuant to 35 U.S.C. § 285.

On January 22, 2018, the district court entered the order at issue in this appeal, granting Drop Stop's motion for attorney fees in part and awarding Drop Stop $600,000 in attorney fees. *Id.* at \*1. At the outset, the court explained that "[i]t's not every day that the Court provides a four-page resuscitation of the facts as it sees them. That's certainly the case here. Taken individually, the pieces of the story might not make Defendants' conduct look exceptional. The whole tale, however, leads to a different conclusion." *Id.* at \*5.

With respect to exceptionality, the district court identified several instances of Defendants' "problematic conduct," including: (1) their "reliance on MacMillan's purported non-infringement opinion" and removal of his disclaimer that a formal opinion was required; (2) their conduct in evading service and defaulting; (3) their use of information obtained during confidential settlement negotiations to add a patent misuse defense; (4) "the late timing of their discovery;" and (5) their "frivolous ex parte practice." *Id.* at \*5–6. "Considering the totality of the circumstances," the district court found that "Defendants conducted themselves in an unreasonable manner" and that Drop Stop was entitled to recover fees under § 285. *Id.* at \*7.

With respect to the calculation of attorney fees, the district court found that Drop Stop "provided adequate supporting documents detailing the basis for its requested fee award." *Id.* Given that the parties "engaged in significant motion practice, attended numerous hearings, and undertook full fact and expert discovery before settling the case," the court found that the fees requested were warranted and were, in fact, "lower than one might expect." *Id.*

The court used "an aggregate, global methodology to evaluate the proper amount of fees." *Id.* Although the court considered apportionment, it found that, "[u]nder the circumstances, it would be inappropriate to apportion fees issue-by-issue as Defendants suggest." *Id.* After reviewing the documents and considering Defendants' objections, the district court concluded that $600,000, of the requested $606,912, was the "proper amount" of attorney fees. *Id.*

Defendants timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

By statute, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2017). District courts have discretion to determine whether a case is "exceptional" on a "case-by-case" basis, considering the totality of the circumstances. *Id.* We review the district court's exceptional case determination for an abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 572 U.S. 559, 561 (2014).

On appeal, Defendants argue that the district court "made multiple legal errors and clearly erroneous assessments of the evidence" in its exceptionality determination. Appellants Br. 23. Defendants rely primarily on the same arguments the district court already considered and rejected. Specifically, Defendants argue that the district court erroneously penalized them for: (1) relying on Mac-Millan's opinion; (2) using Drop Stop's settlement statements to create a new patent misuse defense; (3) failing to produce discovery; and (4) raising previously-stricken or waived defenses. Defendants submit that, when the district court's errors are set aside, "the only remaining basis for the district court's exceptionality finding is the delay resulting from Defendants' default judgment and motion to set aside default." *Id.* at 25. According to Defendants, there is no evidence that they "litigated in a manner so outside the norm as to warrant an exceptionality finding." *Id.* at 25–26. We disagree.

The Supreme Court has made clear that a district court may award attorney fees where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless" exceptional. *Octane Fitness*, 572 U.S. at 555. Here, the district court provided a thorough explanation for why it found this case to be exceptional. As the court explained, while the individual acts of misconduct "might not make Defendants' conduct look exceptional," Defendants' conduct over the course of the entire litigation "support the conclusion that this is an exceptional case." *Decision on Appeal*, 2018 WL 1407031, at *5.

Because the district court "lives with the case over a prolonged period of time," it "is better positioned to decide whether a case is exceptional." *Highmark*, 572 U.S. at 564 (citing *Pierce v. Underwood*, 487 U.S. 552, 559–60 (1988)). The district court properly examined the totality of the circumstances and found this case to be exceptional. Upon review, we cannot say that the district court abused its discretion in reaching that conclusion.

Defendants also argue that, even if this case is "exceptional, the district court's fee award of $600,000 was clearly erroneous." Appellants Br. 55. It is well established that district courts have "considerable discretion" to determine the amount of reasonable attorney fees under § 285. *Homeland Housewares, LLC v. Sorensen Research*, 581 F. App'x 877, 881 (Fed. Cir. 2014) (quoting *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012)). This deference stems from "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Bywaters*, 670 F.3d at 1228 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

On appeal, Defendants maintain that the district court erred by: (1) "basing its fee award on Drop Stop's counsel's redacted invoices;" and (2) failing to apportion fees to the specific acts of misconduct. Appellants Br. 57, 61. Neither argument has merit.

As to the first, the district court carefully reviewed the billing records and other supporting documents and used "an aggregate, global methodology to evaluate the proper amount of fees." *Decision on Appeal*, 2018 WL 1407031, at *7–8. The court explained that Drop Stop "provided adequate supporting documents detailing the basis for its requested fee award." *Id.* at *7. Notably, Defendants do not challenge any specific entries on the invoices. Nor do they allege that the district court inadequately reviewed the supporting documents. We conclude that the district court properly reviewed Drop Stop's invoices and considered the totality of the circumstances.

As to apportionment, the district court noted that the Defendants failed to "explain how fees could be apportioned in this case." *Id.* at *7. The court found, moreover, that Defendants' conduct permeated every stage of the litigation. Specifically, the court indicated that the "fees were

incurred largely due to Defendants' actions—including delay tactics, chilling defenses, and re-raised arguments— taken during the course of the litigation." *Id*. In these circumstances, the court concluded that "it would be inappropriate to apportion fees issue-by-issue." *Id*. We find no error in that conclusion.

Although Defendants argue that the district court erred by awarding 99% of the requested amount, the court explained that Drop Stop's "counsel reasonably reviewed his requested fees and [did not] seek fees for some significant hours spent on the case." *Id*. In any event, the district court exercised its discretion in excluding certain fees and costs and awarding less than the full amount Drop Stop requested. On this record, we conclude that the district court's discretionary determination of fees is well-supported.

## III. CONCLUSION

We have considered Defendants' remaining arguments and find them unpersuasive. Because the district court did not abuse its discretion in finding this case exceptional under § 285 and awarding attorney fees, we *affirm* the district court's order in its entirety.

**AFFIRMED**